IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LUPITA N. CONNOR,              )<br>                                          )<br>     Plaintiff,                    )<br>                                          )<br>     v.                              )<br>                                          )<br>MICRON TECHNOLOGY, INC., a  )<br>Delaware corporation, and        )<br>JOHN/JANE DOES I through X   )<br>whose true identities are presently )<br>unknown                          )<br>                                          )<br>     Defendants.                  )<br>_____ ) | Case No. CV-05-275-S-BLW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

The Court has before it Defendant Micron Technology Inc.'s ("Micron") Motion for Summary Judgment (Docket No. 21). The Court heard oral argument on the motion on February 7, 2007. Thereafter the parties filed supplemental briefs pursuant to the Court's request. The Court now issues the following decision.

## BACKGROUND

From March 1998 until January 2004, Lupita Connor was employed at Micron Technology, Inc. ("Micron") in Boise, Idaho. Connor claims that

**Memorandum Decision and Order - 1**

beginning in 1998 or 1999, the "lead" of that area, John Morin, began sexually harassing her.

Connor claims that she received continuous sexual advances and requests for sexual favors from Morin, including invitations to go out dancing with him. Connor eventually agreed to go dancing with Morin sometime in approximately 2000. That night, Connor drank heavily, engaged in oral sex with Morin in his car, and then passed out. Connor claims that she engaged in no other consensual sexual acts with Morin, but that he continued to sexually harass her at work through January 2003.

On January 22, 2003 Connor's husband called Micron and filed a sexual harassment complaint on behalf of Connor. Micron investigated the situation and fired Morin five days later on January 27, 2003. Micron then offered Connor a new shift and area, but she refused. Conner later requested a transfer, and after making several changes to try to accommodate Connor's request, Micron ultimately placed Connor at its Crucial Technology building in Meridian Idaho in September 2003. Connor then requested another change so that her schedule would not conflict with her school schedule and work schedule at another job.

To facilitate this most recent requested change in schedule, Connor was required to update her training. Connor's supervisor at Crucial told Connor that

**Memorandum Decision and Order - 2**

she would need to train with John Purtill because he was in charge of training at that time. Connor refused to train with Purtill, and Micron terminated Connor on January 14, 2004.

## ANALYSIS

### I. Summary Judgment Standard

The party moving for summary judgment has the burden of proving the absence of any genuine issue of material fact that would allow a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility determinations. *Id.* The trial judge must determine whether the evidence presented is such that a jury applying the proper evidentiary standard could reasonably find for either the plaintiff or the defendant. *Id.*

### II. Title VII Claims

Although not altogether clear from Connor's Complaint, or her briefs, it appears that Connor is making two separate, but similar, claims under Title VII. Connor's first claim is a sexual harassment claim. Her second claim is a retaliation claim. The Court will address each claim separately.

####   A. Sexual Harassment Claim

**Memorandum Decision and Order - 3**

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). However, when no tangible employment action is taken, an employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. *Id.* The *Faragher* defense is available to the employer if two elements are shown: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

With regard to the first element of the defense, "proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law." *Id.* However, "the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense." *Id.* With regard to the second element,"proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer,"

**Memorandum Decision and Order - 4**

bit "a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Id*. at 807-08.  There is an inherent limit to the defense, it is not available "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." *Id*. at 808.

### 1. No Tangible Employment Action

Connor contends that her supervisor's[1] harassment culminated in an undesirable reassignment of being forced to work under John Purtill or suffer termination.  The undisputed facts show a different story.

Within a week after Connor's husband first reported to Micron that Connor had been sexually harassed by Morin, Micron terminated Morin.  (Brown Aff., Ex. D, ¶ 6, Docket No. 22; Olsson Aff., Ex. D, Hope Depo. Pp. 33-36, Docket No. 23).  Micron then offered, but did not require, a new shift and area assignment for Connor.  Connor chose not to accept the new shift and area assignment.  (Olsson Aff., Ex. C, Seale Depo. 47-48, Docket No. 23).  Conner later requested a transfer.  (Olsson Aff., Ex. C, Seale Depo. 48, Docket No. 23).  After making several changes to try to accommodate Connor's request, including shift transfers, Micron

---

[1] Micron disputes that John Morin was Connor's supervisor.  The Court need not address this contention because even assuming he was her supervisor, Connor's sexual harassment claim fails as a matter of law.

**Memorandum Decision and Order - 5**

ultimately placed Connor at its Crucial Technology building in Meridian Idaho in September 2003.  (Olsson Aff., Ex. C, Seale Depo. 57; Ex. D, Hope Depo. 66-67, Docket No. 23).  Connor requested another change so that her schedule would not conflict with her school schedule and work schedule at another job.  (Brown Aff., Ex. E, ¶ 7, Docket No. 22).

To facilitate this requested change in schedule, Connor was required to update her training.  Connor's supervisor at Crucial told Connor that she would need to train with John Purtill because he was in charge of the training at that time. (Brown Aff., Ex. E, ¶ 7, Docket No. 22). Connor refused to train with Purtill. (Brown Aff., Ex. E, ¶ 7, Docket No. 22).  Micron therefore terminated Connor on January 14, 2004.  (Brown Aff., Ex. E, Docket No. 22).

Connor claims that Micron created an undesirable reassignment for her by forcing her to work under Purtill or suffer termination.  Connor claims that working under Purtill was undesirable because Purtill made "inappropriate inquiries of John Morin with other operators around." (Brown Aff., Ex. E, Docket No. 22).  This generic accusation, without more, is not enough to conclude that training under Purtill was an undesirable reassignment.  Moreover, as illustrated above, Micron did not require the reassignment; Micron simply tried to accommodate Connor's requested transfers.  The Court therefore concludes that

**Memorandum Decision and Order - 6**

there is no dispute that Morin's harassment did not culminate in a tangible employment action.

### 2. Micron exercised reasonable care to prevent and correct promptly any sexually harassing behavior.

Connor relies heavily on the Human Rights Commission's Report ("Commission's Report") as evidence that Micron did not exercise care to prevent and correct promptly any sexually harassing behavior. "An EEOC letter is a highly probative evaluation of an individual's discrimination complaint," and should be admitted into evidence. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283 (9th Cir. 2000). "Such letters, however, are not homogeneous products; they vary greatly in quality and factual detail." *Id.* The court went on to determine that "[t]he EEOC letter in [*Coleman*] stated simply that The Commission's investigation finds reasonable cause to believe that [Quaker] has violated the [ADEA], . . . and "[i]t is impossible from this letter to know what facts the EEOC considered and how it analyzed them. Examining similarly conclusory EEOC letters, other circuits have concluded that when the letters only report bare conclusions, they have little probative value." *Id.* at 1288 (internal quotations omitted).

In this case, the Commission's Report contains more than bare conclusions. It is a fairly detailed report, explaining what facts the commission considered and

**Memorandum Decision and Order - 7**

how it analyzed them. (Connor Aff., Ex. 2, Docket No. 29). It is therefore probative and this Court will consider the facts, analysis and findings contained in the report. The Court will not, however, simply adopt the conclusions reached in the Commission's Report. In fact, the Court finds that the Commission relied on inaccurate evidence in reaching its conclusion that Micron did not exercise care to prevent and correct promptly any sexually harassing behavior.

The Commission's Report acknowledges that Micron has a sexual harassment policy, that Connor received both verbal and written information about the policy, and that Connor attended harassment free workplace training. (Connor Aff., Ex. 2, p. 13, Docket No. 29). These findings are supported by the evidence in the record before this Court. (Brown Aff., Ex. C, Docket No. 22).

The Commission's Report also acknowledges that once Connor's husband complained about Morin (the first complaint ever made by or on behalf of Connor) Micron promptly responded by investigating and terminating Morin within a matter of days. This evidence is likewise supported by the record before this Court. (Brown Aff., Ex. D, ¶ 6, Docket No. 22; Olsson Aff., Ex. D, Hope Depo. Pp. 33-36, Docket No. 23).

However, the report goes on to state that "evidence shows that [Micron] knew of at least some of Mr. Morin's previous acts of sexual harassment yet did

**Memorandum Decision and Order - 8**

not take appropriate corrective action at that time and did not exercise reasonable care to prevent future harassing behavior by Mr. Morin." (Connor Aff., Ex. 2, p. 13, Docket No. 29). Such evidence is nowhere in the report and nowhere in the record before this Court. The record does reflect that in 1998, Morin's supervisor met with him regarding female employees who were concerned about Morin getting too close to them and touching their arms, shoulders and necks. (Brown Aff., Ex. F, Docket No. 22). However, the report reflects that the female employees specifically noted that Morin's behavior was not done "in a threatening manner or in a sexual manner." (Brown Aff., Ex. F, Docket No. 22). Nevertheless, Micron informed Morin that the actions were inappropriate and that if he did not stop he would be terminated. (Brown Aff., Ex. F, Docket No. 22). There is no record of any other complaints about Morin until Connor's husband complained in 2003, after which, Micron terminated Morin within a matter of days. Based on these actions, the Court finds that as a matter of law, Micron exercised reasonable care to prevent and correct promptly the sexually harassing behavior. The Commission's Report to the contrary is wholly unsupported by the record before the Court.

> **3.   Connor unreasonably failed to take advantage of any preventive or corrective opportunities provided by Micron or to avoid harm otherwise.**

**Memorandum Decision and Order - 9**

"[W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher*, 524 U.S. at 807-08; *see also* *Montero v. AGCO Corp*, 192 F.3d 856, 862 (9th Cir. 1999). In this regard, this case is strikingly similar to *Montero*, where the Ninth Circuit affirmed the district court's summary judgment finding in favor of the company, based on the *Faragher* defense.

In *Montero*, the plaintiff knew about her employer's (AGCO) policy prohibiting sexual harassment and had received several copies of it. *Montero*, 192 F.3d at 863. Connor likewise knew about Micron's sexual harassment policy and had received a copy of it along with specific sexual harassment training. (Brown Aff., Ex. C, Docket No. 22). Additionally, in *Montero*, although the employee claimed that certain individuals began sexually harassing her shortly after she began working at AGCO in 1993, she waited almost two years to complain. *Id.* When she finally did complain, AGCO's response was swift and certain – it investigated and terminated the perpetrators within eleven days. *Id.*

Connor's complaint was even more delayed than Montero's complaint.

**Memorandum Decision and Order - 10**

Connor suggests that she was first sexually harassed sometime in about 1999, approximately four years before she complained. Moreover, Micron's response was more swift, and just as certain, as that of AGCO – Micron investigated and terminated Morin within five days of Connor's complaint. Thus, like AGCO, Micron has successfully established the second prong of the Faragher defense by showing that Connor unreasonably failed to take advantage of the company's preventive and corrective opportunities earlier, although she knew of their existence. *Id.*

Accordingly, Micron has met each of the elements of the *Faragher* defense and is therefore entitled to summary judgment on Connor's Title VII sexual harassment claim.

### B.     Retaliation Claim

To make out a *prima facie* case of retaliation under Title VII, Connor must demonstrate that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision." *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065-66 (9th Cir. 2003). If Connor establishes a *prima facie* retaliation claim, the familiar burden-shifting scheme set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *Cornwell v. Electra Cent. Credit Union,*

439 F.3d 1018, 1035(9th Cir. 2006). Under *McDonnell Douglas*, once Connor makes out a *prima facie* retaliation case, the burden shifts to Micron to articulate some legitimate, non-retaliatory reason for the challenged action. If Micron meets its burden, Connor must then show that the articulated reason was merely a pretext for a retaliatory motive.

Connor argues that she was terminated because she reported sexual harassment to Micron. However, Connor cites nothing in the record to support her assertion that there was a causal link between her sexual harassment claim and her termination. The closest Connor comes to providing evidence of causation is reference to the Commission's Report. However, even the Commission's Report found "no probable cause to believe that [Micron] retaliated against [Connor]. (Connor Aff., Ex. 2, p. 15, Docket No. 29). Thus, Connor has not met her burden of establishing a *prima facie* case of retaliation. Specifically, Connor has not shown a causal link between her sexual harassment claim and her termination.

Moreover, even if Connor had established a *prima facie* retaliation claim, Micron has met its burden of articulating a legitimate, nondiscriminatory reason for terminating Connor. As noted above, Micron terminated Connor because she refused to attend her training sessions. (Brown Aff., Ex. E, Docket No. 22). The burden then shifts to Connor to show that the articulated reason was merely a

**Memorandum Decision and Order - 12**

pretext for a discriminatory motive.  Connor has not even attempted to make such an argument.  Accordingly, the Court will also grant summary judgment in favor of Micron on Connor's Title VII retaliation claim.

## III.  IHRA Claims

The Idaho Supreme Court has held that the IHRA will be interpreted in a manner consistent with the ADA and Title VII.  *See F*[oster v. Shore Club Lodge, 908 P.2d 1228, 1232-33 (1995);](#) *see also* [Bowles v. Keating, 606 P.2d 458, 461-62 (Idaho 1979)](#).  Thus, based on the above analysis, the Court will also grant summary judgment in favor of Micron on Connor's IHRA claim.

## IV.  State Law Claims

Having dismissed Connor's Title VII claims, this Court no longer has original jurisdiction in this matter pursuant to [18 U.S.C. § 1331](#).  This Court will therefore exercise its discretion to decline jurisdiction over Connor's state law claims.[2]

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant Micron's

---

[2] The parties indicated that Idaho courts have not addressed whether Idaho's Worker's Compensation is the exclusive remedy for a claim such as Connor's negligent supervision claim.  The Court points the parties to [Doe v. Albertson's, 112 P.3d 812, 818-19 (Idaho 2005)](#) for their edification.  This case may not directly answer the question, but it does give a good indication of how Idaho Courts may rule on such an issue.

**Memorandum Decision and Order - 13**

Motion for Summary Judgment (Docket No. 21) shall be, and the same is hereby, GRANTED.

The Court will enter a separate Judgment as required by Federal Rule of Civil Procedure 58.



DATED:  **March 27, 2007**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 14**